IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

FILED BY _____ D.C.

JUN 14 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

CURTIS MCNEAL, AND MAURICE
SYMONETTE                    )
                             )Case No.:   10-61928 CA 05
                             )
                             )
            Plaintiff(s),    ) COMPLAINT FOR: QUIET TITLE
    vs.                      )
                             ) 1. WRONGFUL FORECLOSURE
                             )
U.S. BANK NATIONAL ASSOCIATION AS  ) 2.  QUIET TITLE
TRUSTEE FOR RASC 2005AHL3.   )
MORTGAGE ELECRONIC           )
REGISTRATION SYSTEMS (MERS)  ) 3. SLANDER OF TITLE
AXIOM FINANCIAL SERVICES     ) 4. FRAUD IN THE CONCEALMENT
RESIDENTIAL FUNDING CORPORATION  )
AND RESIDENTIAL FUNDING CO. LLC,  ) 5.  UNJUST ENRICHMENT
SEC.                         )
                             ) 6.  DECLAROTORY & INJUNTIVE
                             )
                             )
                             )
                             )
                             )
                             )
            Defendants.      )
                             )
                             )

COMES NOW the Plaintiff's Curtis McNeal and Maurice Symonette (Plaintiffs)

complaining of the Defendants as named above and each of them, as

follows:


I. THE PARTIES

1

securitization of the Note and/or the Deed of Trust as more particularly described in this Complaint.

5.Defendant, SEC, Plaintiff is informed and believe, and thereon allege, that SEC is the Federal Government whose last known address is 100 F. Street NE Washington, DC 20549.

7.  Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., aka MERS ("MERS"), Plaintiff is informed and believe, and thereon allege, that MERS is a corporation duly organized and existing under the laws of DADE, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of DADE, State of FLORIDA. Plaintiff is further informed and believe, and thereon allege, that Defendant MERS is the purported Beneficiary under the Deed of Trust and/or is a purported participant in the imperfect securitization of the Note and/or the Deed of Trust, as more particularly described in this Quiet Title Complaint.

 8.  At all times relevant to this action, Plaintiff has owned the Property located at 15020 SOUTHRIVER DRIVE MIAMI FLORIDA 33167.

9. Residential Funding Corporation Plaintiff is informed and believe, and thereon allege, that Residential Funding Corporation is a corporation duly organized and existing under the laws of Minneapolis, MN, whose last known address is Suite 600 8400 Normandale LK BLVD Minneapolis, MN 55437-1073.

9.  Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is

1.Plaintiff is now, and at all times relevant to this action, a resident of the County of DADE, State of

FLORIDA.

2. Defendant, Axiom Financial SERVICES, doing business in the County of DADE, State of FLORIDA.

Plaintiff is further informed and believes, and thereon alleges, that Axiom Financial SERVICES is the

Originator of the loan. *Address is 1050 East Van Fleet Drive Bartow Florida. Polk County*

3.  Defendant, RESIDENTIAL FUNDING CO. LLC, (herein after known as RFC. LLC") ,

Plaintiff is informed and believe, and thereon allege that, Defendant is doing business in the

County of DADE, State of FLORIDA and is the purported Master Servicer for Securitized Trust

and/or a purported participant in the imperfect securitization of the Note and/or the Deed of

Trust as more particularly described in this Complaint.


4. US Bank National Association as Trustee for RASC 2005AHL3, HERE IN AFTER KNOWN

AS US BANK Trust"). Plaintiff is informed and believe, and thereon allege that, Defendant US

Bank National Association as Trustee for RASC 2005AHL3, doing business in the County of

DADE, State of FLORIDA and is the purported TRUSTEE for Securitized Trust and/or a

purported participant in the imperfect securitization of the Note and/or the Deed of Trust as

more particularly described in this Complaint. *Address 42 Walnut Street Cincinnati Ohioh 45202*

4.  Defendant, AXIOM BANK. Plaintiff is informed and believe, and thereon allege that,

Defendant, is a corporation, doing business in the County of DADE, State of FLORIDA and is

the purported Sponsor for Securitized Trust and/or a purported participant in the imperfect

informed and believe, and therefore allege, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

10. Plaintiff is informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## II. JURISDICTION

11. The transactions and events which are the subject matter of this Complaint all occurred with in the County of Dade, State of Florida.

12. The Property is located within the County of Dade State of Florida with an address of 15020 south river drive Miami Florida 33167.

## III. INTRODUCTION

13. This is an action brought by Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

14. Plaintiff, homeowner, disputes the title and ownership of the real property in question (the "Home"), because this case was Dismissed with prejudice, exh. A. and never appealed

with in the 30 days, see Docket page 2, exh. B. as required by Florida Statute 9.130 and never appealed. which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Property and thus, do not have lawful ownership or a security interest in Plaintiff's Home which is described in detail herein. For these reasons, the Court should Quiet Title to the property in Plaintiff's name.

15. Additionally, Plaintiff homeowner brings causes of action against all defendants for Quiet Title, fraud, intentional infliction of emotional distress, rescission, declaratory relief based, and violations of T.I.L.A. and R.E.S.P.A., upon the facts and circumstances surrounding Plaintiff's original loan transaction and subsequent securitization. Defendants' violations of these laws are additional reasons this Court should quiet title in Plaintiff's property in Plaintiff and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

16. From 1998 until the financial crash of 2008-2009, over 60 million home loans where sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions. The Plaintiff's home loan was one of the 60 million notes that were securitized.

17. Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms. The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a

situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

18. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note. The Notes would be transferred, and the Deeds of Trust assigned to the buyers of the Note, with an Assignment made every step of the way and furthermore, each Note would be endorsed to the next party by the previous assignee of record.

19. Each REMIC Trust created by the investment banks, usually under New York Law, would be funded with thousands to tens-of-thousands of mortgage notes. In order to maintain their bankruptcy-protected status, REMIC's had to have closing dates by which every mortgage note that was to be sold to the REMIC had to be "owned" by the REMIC. Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

20. How a particular mortgage loan ended up being transferred to a REMIC in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA"). The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which,

along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions. Assignments do not memorialize PSA's

21. When the Plaintiff in this case closed on the property, the original lender (or other entity claiming ownership of the note) said in 2017 on page 9 of the docket, **exh. B**. ten years after Lis Pendens was filed in April 26. 2007, **exh. A2.** said that they signed a PSA that governed plaintiff's particular mortgage note. The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and described exactly how the homeowner's note is to find its way from the original lender to the REMIC trust.

22. A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee. Here is a chart detailing the typical key party assignment chain required by a typical PSA: **see exh. N, 23. page 1.** As part of the process, the banks almost universally separated the mortgage note from the deed of trust. Under the common law, the owner of the note has the right to payments on the note, and the owner of the deed of trust has the right to foreclose on the homeowner if the homeowner defaults on the note. Traditionally, before investment banks began securitizing mortgage notes, the holder of the note would universally hold the deed of trust. This made sense because the party with the right to collect payments on the note would want to be able to foreclose using the deed of trust if the homeowner defaulted.

24. However, to streamline the securitization process, the investment banks created an entity called Mortgage Electronic Registrations System ("MERS"), who is one of the

defendants in this case. The investment banks, in addition to using MERS' electronic database to track the buying, selling, and assignments of securitized mortgage notes (bypassing the county clerks' offices), would transfer deeds of trust to MERS, thereby separating the mortgage note from the deed of trust. MERS would hold the deed of trust for whoever later claimed to be the "owner" of the homeowners' mortgage note.

25. Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

26. Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or Endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

27. Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

28. Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

      a. An invalid and unperfected security interest in Plaintiff's Home hereinafter described;

b. Void "True Sale(s)" violating FLORIDA law and express terms of the

Pooling and Servicing Agreement ("PSA") governing the securitization of

Plaintiff's mortgage;

c. An incomplete and ineffectual perfection of a security interest in Plaintiff's

Home;

## IV. FACTUAL ALLEGATIONS

29. On or about JUNE 30 2005 (hereinafter referred to as "Closing Date") Plaintiff entered

into a consumer credit transaction with by obtaining a $448,000.00 mortgage loan secured by

Plaintiff's principal residence, (Subject Property). This note was secured by a First Trust

Deed on the Property in favor of Axiom Financial SERVICES.

30. Plaintiff's loan was securitized, with the Note not being properly transferred to

Defendant, US Bank National Association as Trustee for RASC 2005AHL3, Plaintiff's note.

Documents filed with the SEC by the securitization participants allegedly claim that the note

and deed of trust at issue in this case were sold, transferred and securitized by Defendants,

with other loans and mortgages with an aggregate principal balance of approximately

$448,000,00 into US Bank National Association as Trustee for RASC 2005AHL3, which is a

Common Law Trust formed pursuant to New York law. A detailed description of the mortgage

loans which form the US Bank National Association as Trustee for RASC 2005AHL3, Trust is

included in Form 424B5 ("the Prospectus"), which has US Bank National Association as Trustee for RASC 2005AHL3, been duly filed with the SEC and which can be accessed through the above mentioned footnote.

31. Plaintiff's PROPERTY LOAN AND COURT documents along with the PSA Agreement filed by Defendants in this foreclosure case reveals that Plaintiff's mortgage note was required to at least go through this assignment chain of key parties before it reached the REMIC trustee it was destined for:

32. The Plaintiff's PSA requires that his/her note or deed of trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties in the above chain of assignment before it reached the REMIC Trustee.

33. Plaintiff executed a series of documents, including but not limited to a Note and Deed of Trust, securing the Property in the amount of note. The original beneficiary and nominee under the Deed of Trust was MERS weather right or wrong.

34. Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the Property, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiff in favor of the original lender and other Defendants, regarding the Property, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA and/or FLORIDA and new York law of the entities making and receiving the purported assignments to this trust.

35. Plaintiff shows that on **page 3 paragraph 1 of exhibit N, that the PSA** requires that each Note or Deed of Trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust exhibit 1a. Here, neither

the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date.
Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified
closing date for the Trust are void. And the Assignment that they finally file into the records is
dated February 14th 2012**, exh. I**. Which is two years after the second lawsuit was illegally
filed 12/06/10 last page of **Docket exh. C,** five years after the first lawsuit was illegally filed,
see last page **of Docket exh. C**, And Mclean V. JPMorgan says for Bank can't foreclose on a
Note before Bank Owns the Note. and even if the Assignment was on time the Assignment
and the Mortgage Note have different Lot numbers thereby voiding the **assignment and the**
**Foreclosure because they didn't correct it on the record exh. I and exh. B1. The PSA**
**Agreement has no address and no lot number, exh. N, on Assignment as required** by
the PSA agreement PAGE 3 PARAGRAPH ONE of, **exh. N.** And the PSA Agreement does
not have the signature of US Bank National Association as Trustee for RASC 2005AHL3, see
the numbered last page of the PSA Agreement, which voids the PSA, **exh. N. And alsoand**
**also the allonge to note on the same day of the closing of the note to Axiom bank was**
**allonged to Residential Funding Corporation, see exh. R. which is a Minnesota**
**company so therefore MERS Falsely acting as Nominee for Axiom Bank could not**
**have assigned the note to US BANK because Residential Funding Corporation as**
**owner were the only ones who could assign the note to US BANK, so MERS**
**assignment to US BANK is Fraud and Void. Note the PSA has another name of**
**Residential Funding Company LLC, exh. N. which is an LLC from Dade County exh. N,**
**which is totally different from Residential Funding Corporation of Minnesota which is**
**on the Allonge, exh. R.  Just totally screwed up in their attempt to steal our property.**

36. Plaintiff further alleges that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.

37. Plaintiff also alleges that the Note was secured by the Deed of Trust. Plaintiff allege that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

38. Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for US Bank National Association as Trustee for RASC 2005AHL3, the Note was duly endorsed, transferred and delivered to US Bank National Association as Trustee for RASC 2005AHL3, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to US Bank National Association as Trustee for RASC 2005AHL3, including all intervening assignments.

39. Plaintiff further alleges that any documents that purport to transfer any interest in the Note US Bank National Association as Trustee for RASC 2005AHL3, after the Trust closing date are void as a matter of law, pursuant to NEW YORK trust law and relevant portions of the PSA.

40. Plaintiff's debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Property was, thus, never perfected. The alleged holder of the Note is not the

beneficiary of the Deed of Trust. The alleged beneficiary of Plaintiff's Deed of Trust does not have the requisite title, perfected security interest or standing to proceed in a foreclosure; and/or is not the real party in interest with regard to any action taken or to be taken against the Property.

41. Plaintiff is also informed and believe, and thereon alleges that at all times herein mentioned, and any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

42. In order for the Trustee of the Securitized Trust to have a valid and enforceable secured claim against Plaintiff's Home, the Trustee must prove and certify to all parties that, among other things required under the PSA:

a. There was a complete and unbroken chain of endorsements and transfers of a Note from and to each party to the securitization transaction which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) Trust/Trustee, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b. The Trustee of the Securitized Trust had actual physical possession of a Note at that point in time, when all endorsements and assignments had been completed. The absent such proof, Plaintiff alleges that the Trust cannot demonstrate that it had perfected its security interest in Plaintiff's Home that is the subject of this action. Therefore, if the Defendants, and each of them, did

not hold and possess the Note on or before the closing date of the Trust herein,

they are estopped and precluded from asserting any secured or unsecured claim in

this case.

43. Plaintiff is informed and believes, and thereon alleges, that pursuant to the terms of the

PSA, the Mortgage Originator (i.e., the original lender herein) agreed to transfer and endorse

to the Trustee for the Securitized Trust, without recourse, including all intervening transfers

and assignments, all of its right, title and interest in and to the mortgage loan (Note) of

Plaintiff's herein and all other mortgage loans identified in the PSA.

44. Plaintiff is further informed and believes, and thereon alleges, that the PSA provides

that the transfers and assignments are absolute, were made for valuable consideration, to

wit, in exchange for the certificates described in the PSA, and were intended by the parties to

be a bona fide or "True Sale." Since, as alleged herein below, True Sales did not actually

occur, Plaintiff alleges that the Defendant Trustees are estopped and precluded from

asserting any secured or unsecured claim in this case.

45. Plaintiff is further informed and believes, and thereon alleges, that as a result of the

PSA and other documents signed under oath in relation thereto, the Mortgage Originator,

sponsor and Depositor are estopped from claiming any interest in the Note that is allegedly

secured by the Deed of Trust on Plaintiff's Home herein.

46. Plaintiff is informed and believe, and thereon allege, that the Note in this case and the

other mortgage loans identified in the PSA, were never actually transferred and delivered by

this illegal PSA. There was no determination of the ability of the borrower to repay the loan,

with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

47. Additionally, Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

48. The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' combined actions as alleged herein.

**FIRST CAUSE OF ACTION: WRONGFUL FORECLOSURE VACATE JUDGMENT FOR FAILURE TO ATTACH A COPY OF THE PROMISSORRY NOTE AND IMPROPER RE-ESTABLISHMENT OF LOST NOTE. Fla. Stat. 702.015(4)**

Fla. Stat.702.015 (4) says you must show a copy of the Note filed with the Complaint at the time the foreclosure is filed and they didn't. The Judge and Defendants was wrong and illegal by not Dismissing or bringing the Case on finding that the Note was not attached to Complaint with US Bank National Association as Trustee for RASC 2005AHL3, name on Note at all. According to Federal Rule 3.1 Standing Rule, standing can be brought up at any time, US Bank National Association as Trustee for RASC 2005AHL3, never possessed any legal right to bring up A lawsuit nor has US Bank National Association as Trustee for RASC 2005AHL3, has ever brought forth the original Note to said property or any note with their name. defendants have failed to Attach a copy of the Note to the complaint in which the complaint itself  was illegal. See Cruz v. JPMorgan Chase Bank N.A. And never

brought Original Note with MERS or US Bank National Association as Trustee for RASC 2005AHL3's, Name on it. The Defendant sought the re-establishment of a lost note, but failed to attach a copy of the original note to the complaint in violation of Rule 1.130. Defen dant states in the Complaint that it does not possess the Note. Pursuant to Florida Statute 673.3091: a person not in possession of an instrument is entitled to enforce the instrument if the person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly aquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred; and the loss of possession was not the result of a transfer by the person or a lawful seizure; The Note in this case was not lost as a result of transfers of the Note by defendants predecessors in interest to Florida rules of civil procedure: copies of the Note and mortgage must be attached. To the mortgage foreclosure complaint (emphasis added). There is no proof that defendant ever held or took possession of the Note and thus could not prosecute this foreclosure.

A.       None of the Defendant has or had Standing to Foreclose

49. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

50. An actual controversy has arisen and now exists between Plaintiff and Defendants specified herein above, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the

Property, or cannot prove to any court they have or had a valid interest. Thus, the purported power of sale by the above specified Defendants, and each of them, no longer applies.

51. Plaintiff knows that this foreclosure case was dismissed with Prejudice and the defendants never motioned the Judge to Reconsider which must be done by the fifth day after judgement WHICH WAS NEVER DONE and no JUDGE can change the Order of another Judge, Calloway v. Ford Motor Co. You can only Appeal and no APPEAL HAS EVER BEEN DONE **exh. A. and according to the docket page 2 lines 6-14, exh. B.** And is informed and believes and there upon allege that the only individual who has had standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks or other entities holding the note in the middle of the chain of transfers were paid in full.

52. Plaintiff further contends that the above specified Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

53. Plaintiff requests that this Court find that the purported power of sale contained in the Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations

of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Property remain in its name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem that any attempted sale of the Property is "unlawful and void".

B.     Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage

4. Since the creation of Plaintiff's Note herein and Deed of Trust, Defendant MERS was all the Assignment is illegal to Mers because it does not have the correct  Lot number as required by Florida Statue to be an assignment, and was never corrected, see **exh. B1. page 3 and 4 and exh. I.  The** foreclosure was filed with the absolute wrong Bank called HOMECOMMINGS FINANCIALS LLC, **exh. J2.** line 2. and another lot number and then did another corrective assignment 5 years latter with no legal description at all as required by florida statute 689 and both assignments were after  the Lis Pendens was filed which against Mclean v. JP Morgan, says can't be done, exh. A2, J and J2, So therefore MERS has no standing, Interest or ownership in the Note and therefore cannot sale or assign the Note as they purportedly did in this assignment to U.S. Bank as Trustee. This is why HOMECOMMINGS BANK LAWYERS and US BANK Lawyers would not come into the Court as  Ordered by the Judge to show the NOTE angering the JUDGE who then Dismissed the case with Prejudice.

55. Also Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because MERS charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities.

56. Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing at the time they file foreclosure  and can't be fixed in **Ab nitio** or retroactively Mclean V. JPMorgan.

57. Plaintiff is informed and believes, and thereon alleges, that pursuant to New York law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

58. The Note in this action identifies the entity to whom it was payable, the original lender. Therefore, the Note herein cannot be transferred unless it is endorsed; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that the original lender endorsed and sold the note to another party.

59. Furthermore, insofar as the parties to the securitization of Plaintiff's Note and Deed of Trust base their claim that the Note was transferred or assigned to Defendant US Bank National Association as Trustee for RASC 2005AHL3, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established state law that the assignment of a Deed of Trust does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

60. Pursuant to state law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note herein specifically identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is endorsed.

61. Defendants, and each of them, cannot produce any evidence that the Promissory Note has been transferred; therefore, Defendant MERS could only transfer whatever interest it had in the Deed of Trust herein. The Promissory Note and Deed of Trust are inseparable: an assignment of the Note carries the mortgage (ie, Deed of Trust) with it, while an assignment of the Deed of Trust alone is a nullity. Therefore, if one party receives the Note and another party receives the Deed of Trust (as in this case), the holder of the Note prevails regardless of the order in which the interests were transferred.

 62. Defendants MERS has failed to submit documents authorizing MERS, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee. Hence, MERS lacked authority as mere nominee to assign Plaintiff's mortgage, making any assignment from MERS defective, **exhibit I.**

63. In the instant action, MERS, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by MERS to the foreclosing trustee.

64. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under law. Therefore, Defendant, MERS, cannot establish that it is entitled to assert a claim in this case. For this reason, as well as the other reasons set forth

herein below, MERS cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

65. Defendants and each of them, through the actions alleged above, have or claim the right to commence foreclosure under the Note on the Property via a foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique. 2 Kelley v. Upshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952); Hyde v. Mangan, 88 Cal. 319, 327, 26 P. 180 (1891); Polhemus v. Trainer, 30 Cal. 685, 688, 1866 WL 831 (1866). SeeJohnson v. Razey, 181 Cal. 342, 344, 184 P. 657 (1919).

66. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the Property to an illegal Pirate.

67. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION: QUITE TITLE

Also, defendants  moves to Quiet the Title in this case according to Fl. Stature 95.011

(2) (c) for failure to complete prosecution within the five year statute of limitation from when ·

They filed their first lis pendens to foreclose 04/30/07,  **about 11 years have passed**

and they have not completed their foreclosure. see docket **exh. C.** thereby surpassing

the statute of limitation to foreclose see Elizabeth Spencer VS EMC Mort. Corp.

Appeals

99). Plaintiffs re-alleges and incorporates by reference the allegations contained in

 Paragraphs  1 through 53.

100). Plaintiffs seeks to quiet title against the claims of the Defendants and all persons

 claiming any legal or equitable right, title, estate, lien, or adverse interest in the

 property as of the date the complaint was filed (Fl. Statute 95.11=Cal Code Civil

 Procedure  760.020).

101). Plaintiffs is title holder of the property according to the QUIT CLAIM DEED Dated

 Jan. 18th, 2013, **see exh. D.**

102). Axiom Bank said they securitized plaintiff's single-family residential mortgage

 According their PSA Plaintiff is informed and believes that the unlawful beneficiary

 has been paid in full. The mortgage states in paragraph 23, PG. 14,  **Exb. B1,:** Re-

 conveyance upon payment of all sums secured by this security instrument, lender

shall request Trustee to re-convey the property and shall surrender this security

instrument and all Notes evidencing debt secured this security Instrument to Trustee.

Trustee shall re-convey the property without warranty to the person or persons

legally entitled to it . . .Mortgage does not state that Mortgagee must make full

payment, only that all secured sums must be paid. Plaintiff alleges that the obligations

owed to Axiom Bank under the mortgage were fulfilled and the loan was fully paid

when Axiom Bank received funds in excess of the balance on the NOTE as Proceeds of

sale through securitization(s) of the loan and insurance proceeds from credit default

swaps. We believe according to their PSA their Trust was used to sell the NOTE in a

bundle of thousands of other NOTES on the market unendorsed so as to be able to

sell it over and over again with each investor believing he owns the NOTE and to stop

investors from going after and collecting on the investment. They made docket and

tax free money over and over again on money Axiom Bank never gave because the

loan was funded by our tax dollars, from the USA Dept. of Treasury, using the Federal

Reserve as the conduit account, Axiom Bank illegally opened with Leroy William's

info. and Promissory NOTE.

103). Defendants claims are adverse to Plaintiff because Plaintiff is informed and

believes that none of the defendants is the holder of the promissory note, none of

them can prove any interest in the note, and none of them can prove that the note is

secured by the mortgage, as well as for the reasons set forth in the proceeding causes

of action. As Such, Defendants have no right, title, estate, lien, or interest in the

property.

104). Plaintiff therefore seeks a judicial declaration that the title to the subject

Property is vested solely in plaintiff and that defendants and each of them be forever

Enjoined from asserting any right, title, estate, lien, or interest in the property

adverse To plaintiff.


## THIRD CAUSE OF ACTION - SLANDER OF TITLE
### FLA. STAT. 770.06


92. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as

though fully set forth herein.

93. The loan to Plaintiff was a federally regulated mortgage loan as defined in

RESPA.

94. Housing and Urban Development's (HUD's) 1999 Statement of Policy

established a two-part test for determining the legality of lender payments to mortgage

brokers for table funded transactions and intermediary transactions under RESPA:

  a) Whether goods or facilities were actually furnished or services were actually performed

for the compensation paid and;

b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

95. In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Plaintiff find themselves in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffer financially as a result of the loan product sold to Plaintiff.

96. No separate fee agreements, regarding the use of Axiom or US Bank National Association as Trustee for RASC 2005AHL3, Cost of Savings" as the Index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided.

97. Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self serving.

98. As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

## FORTH CAUSE OF ACTION.
## FRAUD IN THE CONCEALMENT

68. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though

fully set forth herein.

69. Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Defendant concealed the fact that Borrower's loan changed in character in as much as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendant but not disclosed.

70. Defendant knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

71. Defendant intended to induce Plaintiff based on these misrepresentations and improper disclosures.

72. Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff's home.

73. Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

74. Defendants were aware of the misrepresentations and profited from them.

75. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

76. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

### FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT

77. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

79. Defendants misrepresented that they are the "holder and owner" of the Note and the beneficiary of the Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the original lender allegedly sold the mortgage loan to US

Bank National Association as Trustee for RASC 2005AHL3, Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Property which they have no monetary or pecuniary interest. This type of conduct is evil.

80. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein.

81. The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property. This material misrepresentation was made with the purpose of initiating the securitization process as illustrated above, in order to profit from the sale of the Property by selling the note to sponsors who then pool the note and sell it to investors on Wall Street and other New York investment banks.

82. Defendants were aware of the misrepresentations and profited from them.

83. As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees and Defendant's are unjustly enriched by being paid to illegally Prosecute this foreclosure Case.

84. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from

engaging in future misconduct U.S. bank has no interest in Plaintiff's Mortgage, so the pending foreclosure on Plaintiff's property would constitute unjust enrichment. The mortgage states that all secured sums must be paid. Plaintiff alleges that the obligations under the mortgage were fulfilled when U.S. Bank received funds in excess of the balance on the NOTE as a result of proceeds of sale through securitization to private investors many times and insurance proceeds from credit default swaps.

## SIXTH CAUSE OF ACTION-DECLAROTORY &

## INJUNTIVE RELIEF FLA. Statue 526.312

Plaintiffs re-alleges and incorporates by reference the allegations contained in Paragraphs. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties. Plaintiff contends:

(a). That US Bank National Association as Trustee for RASC 2005AHL3, is not the present holder in due course or beneficiary of a promissory Note executed by Plaintiff. However, Defendants contend that US Bank National Association as Trustee for RASC 2005AHL3. is the present owner and beneficiary of a promissory Note executed by Leroy Williams.

(b). That Defendants are not real parties in interest, do not have standing and are not entitled to accelerate the maturity of any secured obligation especially because we

the Plaintiffs were making the payments on the property in time until they stopped

excepting our payments for no reason and started foreclosing  and because they are not

beneficiary or authorized agent of beneficiaries under the proported promissory

NOTE. However these Defendants assert that they are entitled to sell the property

wow!

(c) That the Notice of *Lis Pendens* recorded in Miami Dade County on 04/30/07

**see last page of the docket line 4, exh. B.** which has an assignment that was recorded

five years after the foreclosure was initiated, **see exh. I.** which cannot be done

according to (McClean v. JPMorgan Chase Bank), you cannot foreclose on property

before the assignment is made, US Bank National Association as Trustee for RASC

2005AHL3, had put themselves on the lis Pendens and complaint as the owners of said

property long before they ever owned it which is fraud and cannot be taken back, it is

**void ab initio**, **see (Pino v. Bank of New york)** US Bank National Association as Trustee

for RASC 2005AHL3, was not Authorized to file a notice of *Lis Pendens* on the property.

Unless restrained, Defendants will, get a writ of possession which would  Cause

Plaintiff's great and Irreparable injury, for which pecuniary compensation would not

afford adequate relief. Defendants wrongful conduct,  until restrained by order of this

court  will cause great irreparable injury to plaintiff as value of the residence

declines under threat of foreclosure and Plaintiff faces the prospect of eviction from his

residence. **Stay the foreclosure sale to examine the facts.**  If the foreclosure sale is

allowed to proceed, the burden on Plaintiffs significantly outweighs the benefit to

Defendants, and each of them. By contrast, if the foreclosure sale is enjoined, the

I MAURICE SYMONETTE DO CERTIFY THAT A TRUE AND CORRECT COPY

WAS SENT TO: BROCK AND SCOTT, PLLC Attorney for the Defendant to1501

NW 49th St. Ste. 200, Ft. Lauderdale FI. 33309 Phone: (954) 618-6955, ext., 6152.

Date

MAURICE SYMONETTE
15020 S. River dr.
Miami,  Fl.  33167

CURTIS McNEAL
15020 S. RIVER DRIVE
MIAMI, FL. 33167